**Affirmed as Modified in Part, Reversed and Remanded in Part, and Memorandum Opinion filed November 13, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00752-CV

---

### JACK COREY AND COREY SUPPLY, INC., Appellants

### V.

### JONATHAN L. RANKIN AND RAMS AVIATION COMPANY, INC., Appellees

---

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Cause No. 31919**

---

## MEMORANDUM OPINION

Appellees Jonathan L. Rankin and RAMS Aviation Company, Inc. (collectively, the "Rankin Appellees") sued appellants Jack Corey and Corey Supply, Inc. (collectively, the "Corey Appellants") to recover the outstanding balance owed for helicopter repair services. The parties proceeded to trial and the jury returned a verdict in favor of the Rankin Appellees; attorney's fees were tried to the bench. The trial court signed a final judgment awarding the Rankin Appellees

$6,833.36 in actual damages and $46,957 in attorney's fees.

The Corey Appellants raise ten issues on appeal challenging the trial court's final judgment based on asserted errors in the jury charge and the relief awarded in the final judgment. We affirm the trial court's judgment as modified in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.  Facts

Rankin owns and operates RAMS Aviation Company, Inc., which provides helicopter repair services. Corey hired RAMS to inspect his helicopter and perform any necessary repairs. Rankin estimated the cost for this work at $49,149.41; of this total, he estimated that the parts would cost $37,292.94. Corey paid up-front for parts and agreed to pay the remaining balance when the repairs were completed.

According to Rankin, Corey's helicopter required more work than initially estimated. Rankin testified that he had several discussions with Corey over the ensuing months regarding the scope of the helicopter's repairs. Rankin could not recall whether he provided Corey with an update on the expected cost of completion.

When Corey arrived to pick up the helicopter, Rankin presented Corey with a final invoice totaling $32,000. The invoice included 257 hours of labor.

Rankin testified that Corey was upset when he received the final invoice and discussed with Rankin the parts and labor required for the job. Rankin testified that Corey "alluded to the fact that he could disrupt [Rankin's] flow of work if [Rankin] didn't work things out with him." Rankin discounted the labor costs "to a point that was acceptable" to Corey and altered the invoice to include only 100 hours of labor. The total amount for the adjusted final invoice equaled $19,833.36. Corey and Rankin "shook hands" and Corey said he would wire the money to Rankin's account.

2

After Corey wired $13,000 to Rankin's account, Rankin called Corey to inquire about the remaining balance. Rankin testified that Corey said "[h]e had decided that that was going to be all that he was going to pay me for on that." Rankin filed a lien on Corey's helicopter for the $6,833.36 remaining on the final invoice. Rankin did not attempt to foreclose on the lien.

## II.      Legal Proceedings

The Rankin Appellees sued the Corey Appellants in November 2010 and asserted claims for breach of contract; promissory estoppel; suit on a sworn account; quantum meruit; unjust enrichment; conversion; fraud; and negligent misrepresentation. The Corey Appellants answered and asserted counterclaims for unfair debt collection practices and wrongful filing of a mechanic's lien.

The parties proceeded to a jury trial in April 2017. Rankin and Corey testified at trial. Numerous exhibits were admitted at trial but the exhibits were "not requested for the appellate record."

At the close of the Rankin Appellees' case, the Corey Appellants moved for a directed verdict on all of the appellees' claims. The trial court granted a directed verdict on the Rankin Appellees' claims for breach of contract; promissory estoppel; quantum meruit; conversion; fraud; and negligent misrepresentation. The trial court denied the Corey Appellants' motion for a directed verdict with respect to the appellees' claim for suit on a sworn account.

After the parties rested, the jury was presented with a seven-question jury charge. The first three questions appear to submit a breach of contract question:

**Question 1:**
Did RAMS Aviation and Jack Corey agree that RAMS Aviation would perform maintenance and repair services on and provide parts for the Aircraft?
Answer "Yes" OR "No": _____

3

**Instructions:**

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions. If you find that the services provided by RAMS Aviation comported with trade[,] custom and usage that actually existed in the aviation industry, then you can consider it in determining the parties' intent.

**Instructions for Questions 2 and 3:**

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1. the extent to which the injured party will be deprived of the benefit which he reasonably expected;

2. the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing;

6. the extent to which RAMS Aviation did not perform the maintenance and repair services in a reasonable amount of time.

If you answered "Yes" to Question 1, then answer Question 2. Otherwise, do not answer Question 2.

**Question 2:**

Did Jack Corey fail to comply with the Agreement?

Answer "Yes" or "No": _____

Question Nos. 1 and 2 track Texas Pattern Jury Charges 101.1 and 101.2 addressing a breach of contract claim. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 101.1, 101.2 (2016). The jury answered "Yes" to Question No. 1 and "Yes" to Question No. 2.

4

Question No. 4 asked the jury to respond with a "sum of money" that "would fairly and reasonably compensate RAMS Aviation for its damages, if any, that resulted from Jack Corey's failure to comply with the Agreement[.]"  The jury answered "$3,416.68" in response to Question No. 4.

Question No. 5 appears to submit a quantum meruit claim:

**Question No. 5:**

Did RAMS Aviation perform compensable work for Jack Corey?

One party performs compensable work if valuable services are rendered or materials furnished for another party who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work.

Answer "Yes" or "No": _____

Question No. 5 tracks Texas Pattern Jury Charge 101.42 addressing a quantum meruit claim.  *See id*. at 101.42 (2016).  The jury answered "Yes" to Question No. 5 and, for Question No. 6, responded with "$6,833.36" as "the reasonable value of such compensable work at the time and place it was performed[.]"

The parties submitted the issue of attorney's fees to the trial court.  The trial court signed a final judgment on May 17, 2017, awarding the Rankin Appellees $6,833.36 in actual damages; pre-judgment interest at the rate of 5%; post-judgment interest at the rate of 18%; $46,957 in attorney's fees; and $888 in court costs.

The Corey Appellants filed a post-verdict motion entitled "Defendants Objections to Plaintiffs' Proposed Judgment and Judgment Not Withstanding the Verdict."  The trial court denied the Corey Appellants' post-verdict motion.  The Corey Appellants timely appealed.

## ANALYSIS

The Corey Appellants assert a variety of arguments on appeal challenging

5

(1) the jury charge; (2) the $46,957 attorney's fees award included in the final judgment; and (3) other aspects of the trial court's final judgment.

With respect to the jury charge, the Corey Appellants assert that the trial court erred by including questions assessing Corey's liability for breach of contract and quantum meruit. The Corey Appellants contend that these claims should not have been submitted to the jury because the trial court previously had granted the Corey Appellants' motion for a directed verdict on these causes of action. The Corey Appellants also assert that the quantum meruit question included in the jury charge did not comport with the format recommended in the Texas Pattern Jury Charge.

Turning to the $46,957 attorney's fees award, the Corey Appellants argue that (1) the trial court abused its discretion by failing to grant the Corey Appellants' objections to the Rankin Appellees' attorney's fees evidence; (2) the Rankin Appellees failed to segregate their attorney's fees evidence between claims for which fees were recoverable and claims for which they were not; and (3) the trial court's attorney's fees award is not reasonable and necessary.

The Corey Appellants' remaining challenges to the trial court's final judgment assert that the judgment erroneously includes (1) certain parties; (2) court costs; (3) mediation costs; and (4) an 18% post-judgment interest rate.

We address these contentions in turn.

## I.      Jury Charge

Pointing out that the trial court granted their motion for a directed verdict with respect to the Rankin Appellees' breach of contract and quantum meruit claims, the Corey Appellants assert that the trial court erred by submitting to the jury questions assessing appellants' liability for these causes of action. The Corey Appellants also assert that Question No. 5 did not comport with the Texas Pattern Jury Charge

6

question for a quantum meruit claim.

The Rankin Appellees argue that the Corey Appellants failed to object to these errors in the trial court as necessary to preserve them for our review.

To preserve a charge error complaint for appellate review, a party must "point out distinctly the objectionable matter and the grounds of the objection." Tex. R. Civ. P. 274; *see also Bruce v. Cauthen*, 515 S.W.3d 495, 511 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Charge error is preserved for appeal if the party's argument on appeal corresponds with its argument in the trial court. *Bruce*, 515 S.W.3d at 511. "A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex. R. Civ. P. 278.

Objections not raised before the charge is read to the jury generally are waived. Tex. R. Civ. P. 272; *see also King Fisher Marine Serv., L.P. v. Tamez*, 443 S.W.3d 838, 843 (Tex. 2014); *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973).

"But a party is not required to object to the charge to complain later that a finding is immaterial." *Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 450 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 402 (Tex. 2017). A jury finding is immaterial if the question "'should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings.'" *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 506 (Tex. 2018) (quoting *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)).

Issues of immateriality may be preserved in a post-verdict motion. *See BP Am. Prod. Co.*, 526 S.W.3d at 402; *see also Dunnagan v. Watson*, 204 S.W.3d 30,

7

40 (Tex. App.—Fort Worth 2006, pet. denied) (immateriality challenge raised for the first time in a motion to disregard jury findings preserved issue for appellate review). An objection need not specifically assert "immateriality" to preserve the moving party's argument on this point. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 704 (Tex. 2007) (immateriality argument preserved even though the appellant's objection did not assert "that the jury question was defective" but only that it "should not have been submitted" at all); *Superior Laminate & Supply, Inc.*, 93 S.W.3d at 449-50 (appellant's post-verdict motions preserved immateriality argument where motions asserted that "any findings on [the challenged] claim should be disregarded").

We apply these precepts to the Corey Appellants' arguments challenging the trial court's jury charge.

### A.      Error Preservation

#### 1.      Breach of contract

Question Nos. 1 and 2 appear to submit a claim assessing Corey's liability for breach of contract. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 101.1, 101.2 (2016). The trial court previously had granted the Corey Appellants' motion for a directed verdict on the Rankin Appellees' breach of contract claim.

At the charge conference, the Corey Appellants did not object to Question Nos. 1 and 2 based on the trial court's prior directed verdict. The Corey Appellants' only objection to these questions addressed the "trade custom and usage" instruction included after Question No. 1; appellants asserted that "[t]here's been no evidence that Mr. Corey is under a trade, custom and usage guideline, that RAMS would be under or that there's a history of this type of agreement[] between each other." This

objection did not preserve the Corey Appellants' contention that Question Nos. 1 and 2 should not have been submitted to the jury. *See* Tex. R. Civ. P. 274; *see also USAA Tex. Lloyds Co.*, 545 S.W.3d at 506.

The Corey Appellants' post-verdict motion challenged the submission of Question Nos. 1 and 2 on grounds that "the Court granted [the Corey Appellants'] motion for directed verdict as to [the Rankin Appellees'] breach of contract claim." This post-verdict objection preserves for our review the Corey Appellants' immateriality challenge to Question Nos. 1 and 2. *See BP Am. Prod. Co.*, 526 S.W.3d at 402; *Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 704; *see also Superior Laminate & Supply, Inc.*, 93 S.W.3d at 449-50.

A directed verdict is proper if the evidence is such that no other verdict could be rendered and therefore the moving party is entitled to judgment as a matter of law. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When the trial court grants a directed verdict on a plaintiff's claim, that claim should not be submitted to the jury. *See, e.g., Hunt v. Baldwin*, 68 S.W.3d 117, 133 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Here, because the trial court previously had granted a directed verdict on the Rankin Appellees' breach of contract claim, this claim should not have been submitted to the jury. *See Tanglewood Homes Ass'n, Inc.*, 436 S.W.3d at 66; *Hunt*, 68 S.W.3d at 133. Question Nos. 1 and 2 therefore were immaterial and should not have been included in the jury charge. *See USAA Tex. Lloyds Co.*, 545 S.W.3d at 506.

### 2.     Quantum meruit

The Corey Appellants assert on appeal two challenges to the trial court's

submission of Question No. 5: (1) Question No. 5 should not have been submitted in light of the trial court's directed verdict on the Rankin Appellees' quantum meruit claim; and (2) Question No. 5 did not comport with the Texas Pattern Jury Charge's recommended form for a quantum meruit claim. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 101.42.

In the underlying proceedings, the Corey Appellants objected to Question No. 5 at the charge conference and in a post-verdict motion. At the charge conference, the Corey Appellants asserted three objections: (1) Question No. 5 is not proper in a suit on a sworn account; (2) Question No. 5 is duplicative of Question No. 1; and (3) "there has been no evidence of any compensable work done" for the Rankin Appellees. In their post-verdict motion, the Corey Appellants asserted that Question No. 5 "fails to conform with the Texas Pattern Jury Charge (PJC 101.42)."

With respect to the Corey Appellants' first challenge, the charge conference objections do not preserve their contention that Question No. 5 should not have been submitted in light of the trial court's earlier directed verdict. The Corey Appellants' charge conference objections do not mention the trial court's directed verdict; they assert error on other grounds. The third objection challenges the submission of Question No. 5 on "no evidence" grounds, but the Corey Appellants do not advance this argument on appeal — they instead acknowledge that compensable work was performed. The third objection does not correspond with the arguments made on appeal and does not preserve anything for our review. *See* Tex. R. Civ. P. 274; *Bruce*, 515 S.W.3d at 511.

Likewise, the Corey Appellants' post-verdict objection to Question No. 5 does not preserve the Corey Appellants' immateriality challenge based on the trial court's directed verdict. *See* Tex. R. Civ. P. 274; *Bruce*, 515 S.W.3d at 511. The Corey Appellants' post-verdict objection challenges Question No. 5 only with respect to its

form.

The Corey Appellants' second post-verdict challenge asserts error in Question No. 5's form based on the Texas Pattern Jury Charge; this error was not raised before the charge was read to the jury. *See* Tex. R. Civ. P. 272, 274; *King Fisher Marine Serv., L.P.*, 443 S.W.3d at 843; *Mo. Pac. R.R. Co.*, 501 S.W.2d at 873. Although this error was raised in the Corey Appellants' post-verdict motion, error with respect to a jury question's form is waived if the objection is not asserted before the charge is read to the jury. *See King Fisher Marine Serv., L.P.*, 443 S.W.3d at 843; *Mo. Pac. R.R. Co.*, 501 S.W.2d at 873.

We overrule the Corey Appellants' objections to the trial court's submission of Question No. 5.

## B.     Effect of Charge Error

We conclude that the trial court erred by submitting to the jury Question Nos. 1 and 2 — these questions submitted a breach of contract claim on which the trial court previously had granted the Corey Appellants' motion for a directed verdict. Because of this error, the Corey Appellants argue that the jury's answers in response to these questions "should have no effect on the Final Judgment."[1]

Error in the submission of an issue generally is deemed to be harmless where the jury's findings with respect to other issues are sufficient to support the judgment. *Hatfield v. Solomon*, 316 S.W.3d 50, 63 (Tex. App.—Houston [14th Dist.] 2010, no

---

[1] In their response to the Corey Appellants' argument, the Rankin Appellees assert that "the trial court erred in granting directed verdicts on Rankin's claims." The Rankin Appellees did not file a notice of appeal in the trial court as required to challenge the directed verdicts on appeal. *See* Tex. R. App. P. 25.1(c); *see also Kwik Indus., Inc. v. Rock Prairie Holdings, Ltd.*, No. 05-13-00054-CV, 2015 WL 1449902, at *11 (Tex. App.—Dallas Mar. 30, 2015, no pet.) (mem. op.) (because the appellees did not file a notice of appeal, they could not challenge on appeal the trial court's order granting the appellants' motion for a directed verdict). We do not address the Rankin Appellees' arguments challenging the directed verdicts.

pet.). If a final judgment is supported by the jury's findings with respect to a viable theory of liability, then submission of an improper jury question is harmless. *See Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 486 (Tex. 2014).

Here, the trial court's final judgment "render[s] judgment in favor" of the Rankin Appellees and awards the appellees $6,833.36 in actual damages. This amount corresponds to jury's finding in response to Question No. 6, which asked the jury to provide "the reasonable value" of compensable work performed by RAMS Aviation for Corey as found in response to Question No. 5. The $6,833.36 damages award was not dependent on the jury's responses to Question Nos. 1 and 2, which submitted the Rankin Appellees' breach of contract claim. The $6,833.36 damages award also was not dependent on the jury's damages finding in response to Question No. 4, which was predicated on the jury's affirmative findings in response to Question Nos. 1 and 2.

Considering the jury charge as a whole, the judgment in favor of the Rankin Appellees and the $6,833.36 actual damages award were not based on an invalid theory of liability. *See Gilbert Wheeler, Inc.*, 449 S.W.3d at 486. Therefore, any error in the trial court's submission of Question Nos. 1 and 2 was harmless. *See Hatfield*, 316 S.W.3d at 63.

## II.     Attorney's Fees

After the jury returned its verdict, the trial court held a brief discussion with the parties' counsel regarding attorney's fees. The trial court instructed the Rankin Appellees' counsel as follows:

> [I]f you would prepare a proposed judgment in draft form, obviously leaving blank the attorney's fees so that we can start working with that. Then go ahead and present the attorney's fees affidavit that we had

12

agreed upon earlier at the beginning of this.

The trial court gave the Rankin Appellees' counsel two weeks to prepare the attorney's fees submission; the trial court "allow[ed] an extra ten days for [the Corey Appellants' counsel] to respond" and "file any objections on the attorney's fees."

Two weeks later, the Rankin Appellees filed an affidavit from Gary L. Evans, one of appellees' attorneys and appellees' designated attorney's fees expert. Included with Evans's affidavit were billing records showing the legal work completed and expenses associated with the Rankin Appellees' representation; the billing records include time entries from November 2010 through April 2017 and list $46,957 in fees and $1,088.62 in expenses. The Corey Appellants objected to the attorney's fees evidence in a filing entitled "Defendants Objections, Motion to Strike and Response to Plaintiff's Affidavit on Attorney's Fees." The trial court signed an order denying the Corey Appellants' requested relief.

The trial court's final judgment awards the Rankin Appellees $46,957 in attorney's fees and $888 in court costs. The final judgment also provides the following contingent appellate attorney's fees awards: $5,000 if the Corey Appellants unsuccessfully seek a new trial; $5,000 if the Corey Appellants unsuccessfully appeal the judgment to an intermediate court of appeals; and $3,500 if the Corey Appellants unsuccessfully appeal the judgment to the Supreme Court of Texas.

The Corey Appellants assert a variety of arguments challenging the trial court's attorney's fees award. These arguments can be grouped into three main categories: (1) the trial court abused its discretion by failing to grant the Corey Appellants' objections to the Rankin Appellees' attorney's fees evidence; (2) the Rankin Appellees failed to segregate their attorney's fees evidence between claims for which fees were recoverable and claims for which they were not; and (3) the trial

13

court's attorney's fees award is not reasonable and necessary.

We address these contentions below.

## A.     Evidentiary Objections

The Corey Appellants assert evidentiary challenges with respect to (1) Evans's expert designation; (2) the Rankin Appellees' failure to produce billing records until they were included with Evans's affidavit; and (3) the final judgment's contingent appellate attorney's fees awards.  These objections were asserted in the Corey Appellants' "Objections, Motion to Strike and Response to Plaintiff's Affidavit on Attorney's Fees," which the trial court denied in a signed order.  These objections are preserved for our review.  *See Trevino v. City of Pearland*, 531 S.W.3d 290, 299-300 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (in a bench trial on attorney's fees, error is preserved with respect to evidentiary objections if the complaint is presented to the trial court and a ruling is secured).

### 1.     Evans's expert designation

The Rankin Appellees designated Evans as their attorney's fees expert in March 2012, approximately five years before trial.  Citing Texas Rule of Civil Procedure 194.2, the Corey Appellants assert that Evans's designation is deficient in two respects.

First, the Corey Appellants assert that Evans's designation fails to include "the general substance of [Evans's] mental impressions and a brief summary of the basis for them . . . ."  *See* Tex. R. Civ. P. 194.2(f)(3).  Evans's expert designation provides the following summary with respect to his testimony:

> [Evans] may testify as [an] expert[] concerning attorney's fees incurred
> in this case.  The general substance of such testimony is that Rankin has
> been forced to incur reasonable and necessary attorney's fees and legal
> expenses, which are increasing as this litigation progresses.  These

14

opinions are based upon [Evans's] experience as [an] aviation trial attorney[] in Texas, [his] familiarity with the facts and circumstances of this case, and consideration of those factors mandated in Texas State Bar Rule 1.04(b).

Evans's expert designation states that his curriculum vitae is attached.

The Corey Appellants do not cite any cases to support their contention that the description included with Evans's expert designation fails to satisfy Rule 194.2(f)(3)'s requirements. A disclosure identifying an attorney's fees expert and stating that the expert will be testifying about the reasonableness and necessity of attorney's fees is sufficient to give the "general substance" of that expert's testimony. *See Goldman v. Olmstead*, 414 S.W.3d 346, 365 (Tex. App.—Dallas 2013, pet. denied); *see also DDR DB Stone Oak, LP v. Rector Party Co.*, No. 04-17-00018-CV, 2017 WL 6032541, at *6 (Tex. App.—San Antonio Dec. 6, 2017, no pet.) (mem. op.). The description included with Evans's designation satisfies this standard. *See Goldman*, 414 S.W.3d at 365; *see also DDR DB Stone Oak, LP*, 2017 WL 6032541, at *6. We overrule the Corey Appellants' first challenge to Evans's expert designation.

Second, the Corey Appellants assert that Evans's expert designation did not include billing records and therefore failed to include "all documents, tangible things, reports, models, or data compilations" Evans reviewed or prepared in preparation for his testimony. *See* Tex. R. Civ. P. 194.2(f)(4)(A).

We previously have held that an expert may testify as to attorney's fees even if the underlying billing records were not produced in response to discovery requests. *See Schlager v. Clements*, 939 S.W.2d 183, 193 (Tex. App.—Houston [14th Dist.] 1996, writ denied)*; see also Young v. Leach*, No. 14-03-00071-CV, 2004 WL 1925967, at *7 (Tex. App.—Houston [14th Dist.] Aug. 31, 2004, pet. denied) (mem. op.). Therefore, the failure to produce billing records with Evans's expert

15

designation does not warrant excluding Evans's testimony altogether. *See Schlager*, 939 S.W.2d at 193; *see also Young*, 2004 WL 1925967, at \*7. We overrule the Corey Appellants' second challenge to Evans's expert designation.

## 2. The billing records included with Evans's affidavit

Asserting that the trial court erred by failing to exclude the billing records included with Evans's affidavit, the Corey Appellants contend that the Rankin Appellees failed to produce the billing records (1) in response to the Corey Appellants' requests for disclosure; (2) in response to the Corey Appellants' requests for production; and (3) with Evans's expert designation as documents reviewed by a testifying expert. *See* Tex. R. Civ. P. 194.2(f), 196.1. The Corey Appellants argue that the billing records therefore were subject to mandatory exclusion under Texas Rule of Civil Procedure 193.6.

Rule 193.6 prohibits a party from offering evidence not timely disclosed in a discovery response unless the trial court finds that (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other party. Tex. R. Civ. P. 193.6(a); *see also Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 874 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The burden of establishing good cause or lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence. Tex. R. Civ. P. 193.6(b). This rule is intended "to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." *Tex. Mun. League Intergovernmental Risk Pool v. Burns*, 209 S.W.3d 806, 817 (Tex. App.—Fort Worth 2006, no pet.) (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992)).

By overruling the Corey Appellants' objections to the Rankin Appellees'

billing records, the trial court implicitly found either (1) there was good cause for the Rankin Appellees' failure to timely make, amend, or supplement their discovery responses; or (2) the Rankin Appellees' failure to timely make, amend, or supplement their discovery responses did not unfairly surprise or unfairly prejudice the Corey Appellants. *See* Tex. R. Civ. P. 193.6; *Moore*, 140 S.W.3d at 874.

The Rankin Appellees assert on appeal that the Corey Appellants were not unfairly surprised or unfairly prejudiced by the billing records' inclusion with Evans's affidavit. The record supports this conclusion. Evans's designation was provided to the Corey Appellants approximately five years before the parties went to trial. Evans's designation clearly stated that he would testify as to the Rankin Appellees' attorney's fees — fees that "increas[ed] as th[e] litigation progresse[d]." After the jury returned its verdict, Evans's affidavit and the billing records were filed with the trial court for its attorney's fees determination; the Corey Appellants were given ten days to review the evidence and respond. The record does not indicate that the Corey Appellants sought a continuance or any additional time to conduct discovery or depose Evans. This record adequately supports the trial court's implied finding that the Rankin Appellees' failure to timely produce the billing records did not unfairly surprise or unfairly prejudice the Corey Appellants. *See Tex. Mun. League Intergovernmental Risk Pool*, 209 S.W.3d at 817 (party's failure to produce billing records did not cause unfair surprise or unfair prejudice where opposing party was aware of attorney's fees claim approximately two years before evidence offered at trial); *see also Pike v. Tex. EMC Mgmt., LLC*, No. 10-14-00274-CV, 2017 WL 2507783, at *19 (Tex. App.—Waco June 7, 2017, pet. denied) (mem. op.) (untimely production of billing records did not cause unfair surprise or unfair prejudice where "the fees corresponded with work associated with trial — largely an event attended by all parties").

17

We overrule the Corey Appellants' challenge to the trial court's admission of the billing records included with Evans's affidavit.

### 3. Appellate attorney's fees

The Corey Appellants' final evidentiary objection asserts that Evans cannot testify with respect to appellate attorney's fees because he "cannot testify as an expert about matters for which he is not designated." Aside from this conclusory assertion, the Corey Appellants do not explain how Evans's expert designation is deficient nor do the Corey Appellants cite any case law to support their position. Evans's expert designation states that he may testify "concerning attorney's fees" and that this testimony is based on Evans's "experience as [an] aviation trial attorney[] in Texas" and his "familiarity with the facts and circumstances of this case and the legal fees and expenses which have been necessary to prosecute." This designation does not purport to limit Evans's testimony to attorney's fees incurred as part of the trial court proceedings.

We overrule the Corey Appellants' evidentiary challenge with respect to the trial court's award of appellate attorney's fees.

### B. Segregation of Attorney's Fees Evidence

The Corey Appellants assert that the trial court erred by awarding the Rankin Appellees $46,957 in attorney's fees because the appellees did not properly segregate between recoverable and unrecoverable fees.[2] To support their attorney's fees claim, the Rankin Appellees submitted to the trial court Evans's affidavit and

---

[2] The Corey Appellants preserved error on this point by objecting when evidence of attorney's fees was presented and considered by the trial court. Tex. R. App. P. 33.1(a)(1); *see also Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-18-00352-CV, 2009 WL 1795037, at *7 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.).

18

billing records. The affidavit and the billing records indicate that $46,957 in total billable hours were incurred in the Rankin Appellees' representation. Neither the affidavit nor the billing records segregate the fees among claims for which fees are recoverable and claims for which they are not recoverable.

The trial court's decision as to whether segregation is required is a question of law we review *de novo*. *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). If any attorney's fees relate solely to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 87 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

But "when discrete legal services advance both a recoverable and unrecoverable claim[,] . . . they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313-14; *accord Clearview Props., L.P.*, 287 S.W.3d at 143. For this determination "we do not look at the legal work as a whole but parse the work into component tasks, such as examining a pleading paragraph by paragraph to determine which ones relate to recoverable claims." *Clearview Props., L.P.*, 287 S.W.3d at 144. Segregation is required even if merely nominal fees were incurred for performing a discrete legal service that advanced only a claim for which fees are unrecoverable. *Chapa*, 212 S.W.3d at 313-14; *see also Home Comfortable Supplies, Inc. v. Cooper*, 544 S.W.3d 899, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

"The party seeking to recover attorney's fees bears the burden of demonstrating segregation is not required." *Clearview Props., L.P.*, 287 S.W.3d at 144. Segregation is required unless the party seeking fees "proves that no amount of the fees it seeks were for a discrete legal service that advanced only a claim or

claims for which fees are [un]nrecoverable." *Milliken v. Turoff*, No. 14-17-00282-CV, 2018 WL 1802207, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.).

Proper fee segregation does not mandate that attorneys keep separate records documenting the exact time spent working on recoverable versus unrecoverable claims. *Citizens Nat'l Bank of Tex.*, 387 S.W.3d at 87. "Rather, segregation is sufficiently established if, for example, an attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted." *Id.*

Here, the Rankin Appellees' original petition pleaded claims for breach of contract; promissory estoppel; suit on a sworn account; quantum meruit; unjust enrichment; conversion; fraud; and negligent misrepresentation. The Rankin Appellees do not dispute that attorney's fees are unrecoverable for some of the claims pleaded in their original petition. *See Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("attorney's fees are not recoverable for prosecuting a fraud or negligent misrepresentation claim"); *Broesche v. Jacobson*, 218 S.W.3d 267, 277 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("[a]ttorney's fees are generally not available for a conversion claim").

The Rankin Appellees do not contend that they segregated their attorney's fees. The Rankin Appellees assert only that their fees "cannot reasonably be segregated as the claims brought by [the Rankin Appellees] are inexplicably intertwined."

But "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313-14.

20

If a discrete legal service does not advance a claim for which fees are recoverable, then the fees for that service must be segregated even if they are nominal. *See id*.

The Rankin Appellees did not present any evidence to show that every legal service that advanced unrecoverable claims also advanced recoverable claims. The record on appeal does not support this conclusion.

The record instead indicates that discrete legal services were expended to advance claims for which fees were not recoverable. For example, the Rankin Appellees' original petition pleaded separate claims for unjust enrichment, conversion, fraud, and negligent misrepresentation; pleading these causes of action required research and drafting specific to these claims. The appellate record also contains the Rankin Appellees' responses to the appellants' interrogatories; the appellees responded to questions seeking information about claims for which fees were not recoverable. The Rankin Appellees therefore were required to segregate their fees between claims for which fees were recoverable and claims for which they were not. *See CA Partners v. Spears*, 274 S.W.3d 51, 84 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (segregation required where claims for which fees were not recoverable required "drafting separate portions of [the appellee's] pleading," "separate legal research," and "possibly separate discovery requests"); *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 509-10 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (segregation required for fees expended to draft pleadings for unrecoverable claim). These fees may be nominal, but they must be segregated nonetheless. *Chapa*, 212 S.W.3d at 313-14; *see also Home Comfortable Supplies, Inc.*, 544 S.W.3d at 910.

Because the Rankin Appellees did not segregate fees over the Corey Appellants' objection, we must reverse the trial court's attorney's fees award and remand for a new trial solely on the amount of attorney's fees. *See Chapa*, 212

21

S.W.3d at 314; *see also Home Comfortable Supplies, Inc.*, 544 S.W.3d at 912.

As a result of our disposition of this issue, we do not reach the question of whether the trial court's attorney's fees award was reasonable and necessary. *See 7979 Airport Garage, L.L.C.*, 245 S.W.3d at 510.

## III.    Final Judgment

The Corey Appellants assert five issues challenging the trial court's final judgment:

1.    The final judgment erroneously awards relief to Rankin because "the jury did not issue any findings for Jonathan Rankin."

2.    The final judgment erroneously awards relief against Corey Supply, Inc. because "the jury did not issue any findings against Corey Supply, Inc."

3.    The final judgment erroneously states the amount of court costs awarded.

4.    The final judgment erroneously includes "a double recovery of $500.00 mediation fees as court costs."

5.    The final judgment erroneously allows for 18% post-judgment interest.

The Corey Appellants asserted these challenges in their post-verdict filing entitled "Defendants Objections to Plaintiffs' Proposed Judgment and Judgment Not Withstanding the Verdict." These issues are preserved for our review. *See Willis v. Willis*, 826 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also Rooney v. Rooney*, No. 14-10-01007-CV, 2011 WL 3684618, at *9 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.).

### A.    Relief Awarded to Jonathan Rankin

The trial court's final judgment awards relief to "Plaintiffs, Jonthan [sic] L. Rankin and RAMS Aviation Company, Inc." The Corey Appellants assert that the final judgment erroneously awards relief to Rankin because "[t]he words 'Jonathan

22

Rankin,' 'Mr. Rankin,' or 'Rankin' do not appear in any jury question."

"The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict . . . ." Tex. R. Civ. P. 301. "The judge may not disregard answers to material issues, set aside findings and make contrary ones, hear additional evidence and make supplementary findings on material issues, or select from conflicting findings those which he approves." *Harris Cty. v. Garza*, 971 S.W.2d 733, 735 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Here, the trial court's final judgment awards relief to Jonathan Rankin although he was not included in any of the jury questions assessing liability or damages — the jury charge assessed liability and damages only with respect to RAMS Aviation. The trial court's final judgment does not conform to the jury's verdict in this regard. *See* Tex. R. Civ. P. 301; *Harris Cty*., 971 S.W.2d at 735. We sustain the Corey Appellants' argument and modify the trial court's final judgment to delete the relief awarded to Jonathan Rankin. *See* Tex. R. App. P. 43.2(b); *see also In re Estate of Tyner*, 292 S.W.3d 179, 183 (Tex. App.—Tyler 2009, no pet.) (appellate court has "the authority to modify incorrect judgments when the necessary information is available" to do so).

**B.      Relief Awarded Against Corey Supply, Inc.**

The Corey Appellants assert that the trial court's final judgment erroneously awards relief against Corey Supply, Inc. because "the jury did not issue any findings against Corey Supply, Inc." But the final judgment does not award any relief against appellant Corey Supply, Inc. — it awards relief only against "Defendant Jack Corey." We overrule the Corey Appellants' argument with respect to this issue.

**C.      Court Costs Included in Final Judgment**

The trial court's final judgment awards the Rankin Appellees "[c]ourt costs in

the amount of $888.00 (mediation and filing fees only)." The Corey Appellants assert that the trial court's final judgment should not "state[] the amount of court costs awarded." The Corey Appellants do not cite any cases to support this contention. Case law suggests that a final judgment's award of a specific amount of court costs is not problematic. *See, e.g., Ruder v. Jordan*, No. 05-16-00742-CV, 2018 WL 672091, at *4 (Tex. App.—Dallas Feb. 2, 2018, no pet.) (mem. op.). We overrule the Corey Appellants' argument with respect to this issue.

### D. Mediation Costs Included in Final Judgment

The trial court's final judgment states that its $888 award of court costs includes only "mediation and filing fees." Challenging this award, the Corey Appellants assert that the Rankin Appellees "already included the $500.00 fee in [their] request for attorney fees," and the $500 included with the court costs therefore constitutes a "double recovery."

We concluded above that the Rankin Appellees failed to segregate their attorney's fees evidence and reversed the trial court's attorney's fees award for a new trial. Because we reversed the trial court's attorney's fees award, we do not reach the issue of whether the attorney's fees award and court costs include a double recovery. *See 7979 Airport Garage, L.L.C.*, 245 S.W.3d at 510.

### E. Post-Judgment Interest Rate

The trial court's final judgment provides for the following recovery with respect to post-judgment interest:

> Post-judgment interest on all of the above at the rate of 18% compounded annually, from the date this judgment is rendered until all amounts are paid in full.

The Corey Appellants assert that an 18% post-judgment interest rate cannot stand because "[t]he Court ruled on directed verdict that the parties did not have a written

24

contract."

The Texas Finance Code provides for a maximum post-judgment interest rate of 18% on certain contract claims:

> A money judgment of a court of this state on a contract that provides for interest or time price differential earns postjudgment interest at a rate equal to the lesser of: (1) the rate specified in the contract, which may be a variable rate; or (2) 18 percent a year.

Tex. Fin. Code Ann. § 304.002 (Vernon 2015); *see also Saad v. Valdez*, No. 14-15-00845-CV, 2017 WL 1181241, at *17 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem. op.) ("Texas law authorizes a maximum lawful rate of 18 percent per annum to be applied to a written contract").

We concluded above that the trial court erred in submitting to the jury Question Nos. 1 and 2, which submitted a claim assessing Corey's liability for breach of contract. We determined that the trial court did not err in submitting Question No. 5, which assessed Corey's liability under a quantum meruit theory. The jury answered "Yes" to Question No. 5 and, in response to Question No. 6, answered "$6,833.36" for "the reasonable value of such compensable work[.]"

The trial court's final judgment awards the Rankin Appellees $6,833.36 in actual damages. This award corresponds to the jury's determination of liability and damages in response to the questions submitting the Rankin Appellees' quantum meruit claim. But the final judgment's inclusion of an 18% post-judgment interest rate is not supported by the jury's quantum meruit findings — an 18% post-judgment interest rate only may be assessed for a "money judgment . . . on a contract." *See* Tex. Fin. Code Ann. § 304.002; *see also Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("a party generally cannot recover under quantum meruit where there is a valid contract covering the services or materials furnished" (internal quotation omitted)). Because

25

we conclude that the trial court erred in submitting to the jury questions assessing the Corey Appellants' liability for breach of contract, we reverse the trial court's final judgment with respect to the applicable post-judgment interest rate and remand for further action consistent with this opinion. *See Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52, 69-70 (Tex. 2015) (remanding case where judgment included incorrect post-judgment interest rate).

## CONCLUSION

We conclude that the jury charge erroneously included questions assessing Corey's liability for breach of contract. Because the trial court's final judgment is adequately supported by other jury findings, this error is harmless. The Corey Appellants did not preserve their challenges to the jury question assessing Corey's liability under a quantum meruit theory and we overrule the Corey Appellants' arguments on this point.

We overrule the Corey Appellants' evidentiary challenges to the Rankin Appellees' attorney's fees evidence. We conclude that the Rankin Appellees were required to segregate their attorney's fees evidence between claims for which fees were recoverable and claims for which they were not recoverable. We reverse the trial court's attorney's fees award and remand for a new trial. We do not reach the question of whether the trial court's attorney's fees award was reasonable and necessary.

With respect to the Corey Appellants' arguments addressing the trial court's final judgment, we conclude that the final judgment erroneously awards relief to Jonathan L. Rankin because he was not included in any jury questions assessing liability or damages. We modify the trial court's final judgment to delete the relief awarded to Jonathan L. Rankin.

The final judgment's inclusion of an 18% post-judgment interest rate also is in error because the jury's verdict does not award a money judgment on a contract. We reverse the trial court's final judgment with respect to the 18% post-judgment interest rate and remand for further action consistent with this opinion.

We overrule the Corey Appellants' remaining challenges to the trial court's final judgment.

In sum, we modify the trial court's final judgment to delete the relief awarded to Jonathan L. Rankin. We reverse the final judgment with respect to the $46,957 attorney's fees award and the 18% post-judgment interest rate and remand these issues for further proceedings consistent with this opinion. We affirm the remainder of the judgment.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Donovan, and Wise.